1   UNITED STATES DISTRICT COURT

2   NORTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - -

4   UNITED STATES OF AMERICA,

5        -versus-                        09-CR-75

6   JOHN PUGLISI.

7   - - - - - - - - - - - - - - - - - - - -

8            TRANSCRIPT OF SENTENCING PROCEEDINGS held in and for

9   the United States District Court, 15 Henry Street, Binghamton,

10  New York, on THURSDAY, June 17, 2010, before the

11  HONORABLE THOMAS J. McAVOY, SENIOR UNITED STATES DISTRICT

12  COURT JUDGE, Presiding.

13

14  APPEARANCES:

15  FOR THE GOVERNMENT:

16  UNITED STATES ATTORNEY'S OFFICE

17  BY:  MIROSLAV LOVRIC, AUSA

18       Binghamton, New York

19

20  FOR THE DEFENDANT:

21  BRUCE BRYAN, ESQ.

22  Syracuse, New York

23  VINCENT ACCARDI, ESQ.

24  Binghamton, New York

25

1          THE CLERK:  United States of America versus

2   John Puglisi, 2009-CR-75.  Please come forward and state

3   appearances for the record.

4          MR. LOVRIC:  Miroslav Lovric for the

5   government.  Good morning, your Honor.

6          THE COURT:  Morning, Mr. Lovric.

7          MR. BRYAN:  Morning, your Honor.  Bruce Bryan

8   and Vince Accardi for the defendant, John Michael Puglisi.

9          THE COURT:  Morning, Mr. Bryan; morning,

10  Mr. Accardi.

11         MR. ACCARDI:  Morning.

12         THE DEFENDANT:  Morning.

13         THE COURT:  All right.  The Court has received

14  and reviewed the presentence investigation report, briefing

15  from both sides as to the issues involved in this case, a

16  number of letters from family of Mr. Puglisi's and friends

17  from people in the community and people in his line of

18  employment supervisors, as well as other people and the Court

19  has reviewed each and every letter.  They're pretty

20  consistent but they're pretty insightful too.  They gave me

21  another look at Mr. Puglisi and what he was all about, apart

22  from this case, which I think is important for the Court to

23  know in the sentencing process.

24         So let me ask, Mr. Accardi, or Mr. Bryan,

25  whoever wants to field the answer to this question:  Have you

1    had an opportunity to review the presentence investigation

2    report with Mr. Puglisi?

3                    MR. BRYAN:  Yes.

4                    MR. ACCARDI:  Yes.

5                    MR. BRYAN:  Both have.

6                    THE COURT:  You going to do this in harmony?

7                    MR. ACCARDI:  I started with it and then

8    Mr. Bryan also had an opportunity to review with him, as

9    well.

10                   THE COURT:  Mr. Puglisi, did you have a chance

11   to read the report yourself?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  Did you have an opportunity to

14   talk it over with your attorney --

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  -- Mr. Bryan or Mr. Accardi?

17   Either one of you want to discuss anything about the factual

18   content of the report?

19                   MR. BRYAN:  No, your Honor.  We had two minor

20   clarifications and that was all set forth in the addendum.

21                   THE COURT:  All right.  And they've been

22   satisfied.  Miss Kaulakowski worked with you and you got them

23   worked out?

24                   MR. BRYAN:  Yes, your Honor.  They were really

25   more additional information to provide.

1          THE COURT:  All right.  How about you,

2    Mr. Lovric?

3          MR. LOVRIC:  We have no objections to the

4    report.

5          THE COURT:  Mr. Puglisi, any objection to the

6    factual content?

7          THE DEFENDANT:  No, sir.  No, sir.

8          THE COURT:  The Court's going to adopt the

9    factual content by a preponderance of the evidence.

10          What would you like to say on behalf of your

11   client before I sentence him?

12          MR. BRYAN:  Well, your Honor, I'm assuming you

13   would like to first go through the guidelines, you know, we

14   have certain objections.  I'll be brief.

15          THE COURT:  That's the first thing we have to

16   do, go there first, that would be great.

17          MR. BRYAN:  Okay.  Yes, your Honor.  Well,

18   we've raised three objections.  I'm just going to be brief

19   and that has to do with an enhancement for use of a computer

20   or interactive computer service.  And the essential thing

21   that we're saying there, we're not contesting the application

22   of that enhancement on the guideline calculation or for the

23   enticement charge.  We're saying that it does not apply to

24   the guideline calculation for the production or attempted

25   production and attempted possession of child pornography and

1  the reason basically for that is those charges are predicated

2  on some text message that occurred in a couple of days.  They

3  happened when Mr. Puglisi was in his home and the victim was

4  in her's.  It was accomplished by cellphone, ordinary

5  cellphone use, which can communicate by radio signal text and

6  pictures.  And we respectfully submit that's not use of

7  computer or interactive computer service.

8              THE COURT:  All right.  Mr. Lovric, what's

9  your position on that?

10             MR. LOVRIC:  Judge, our view is that the

11  guideline provision for that enhancement is written, in fact,

12  in very broad terms.  It simply and primarily states that

13  there was a use of a computer.  When applied to the facts of

14  this case, we believe that the guideline provision is

15  applicable for a couple of reasons.  One, the communications

16  at times occurred over the use of a computer.  Granted the

17  defendant may not have been using his computer to communicate

18  with the minor but the minor at times was utilizing a

19  computer to communicate with the defendant on his cellphone.

20  We think that in and of itself triggers the application of

21  that provision in that a computer was used.  I disagree with

22  the defense that the -- that usage of the computer has no

23  bearing on the production or attempted production.  In our

24  view it does because, as the Court may recall, the production

25  or attempted production of images in this case almost

1  directly stemmed from the communications that were occurring

2  between the defendant and the minor.  It was through those

3  communications that the defendant was asking for pictures to

4  be taken and commenting on pictures that were taken by the

5  minor.

6        THE COURT:  That was done by cellphone.

7        MR. LOVRIC:  The defendant was on his

8  cellphone but at times the minor was on the computer.  My

9  point is that there is relevance to use of a computer and the

10  attempted production of images because the communications

11  that were occurring between defendant and the minor, those

12  communications specifically at times led to these photographs

13  being taken, not that the computer was used to take them or

14  to store them but I don't think the guidelines require that.

15  So our position is that it's applicable.

16        THE COURT:  All right.  The Court believes in

17  this case that as far as the enticement portion is concerned,

18  that the computer use application should apply but not as far

19  as the production is concerned, so I'm going to reduce two

20  points off the total score.

21        MR. BRYAN:  Thank you.

22        THE COURT:  What's the next point?

23        MR. BRYAN:  Next, your Honor, is the

24  application of a two-level enhancement for supervisory

25  control.  And, again, it's a very similar argument.  Your

1  Honor, there's very little case law.  There's only one case

2  that I found on this and the guideline itself says teachers

3  do fall within this but the -- there's a Third Circuit

4  opinion and it is dicta, but it says that it's not a

5  guideline that applies at all times but it's a situation

6  which the supervisory control is occurring when the criminal

7  conduct occurs.

8            So our argument is that as far as -- we're not

9  contesting the enticement.  It's the production or attempted

10  production and possession and there it's happening at night.

11  He's in his apartment, she's at her home, and he's not acting

12  in his role as a teacher at that time, therefore, the

13  supervisory control enhancement should not apply we say to

14  the guideline calculation for the attempted production.

15            THE COURT:  All right.  Mr. Lovric.

16            MR. LOVRIC:  Judge, our view is you can't

17  really parcel out particular acts day by day or hour by hour.

18  In our view, you have to step back and look at the totality

19  of the relationship between the victim and the defendant and

20  not just at the exact moment that either production or

21  attempted production occurs.  When you did that, in our view,

22  there's clearly a supervisory relationship and control.  The

23  defendant in his position as a teacher, as a mentor, at the

24  school and in all of the times that he is communicating with

25  the minor at school, I don't think it's a stretch to say that

1    a lot of that activity that occurs when there is a

2    supervisory relationship in play lends to the fact that then

3    it's easier for the defendant to have the minor do what he

4    asked her to do, which was the taking of these photographs

5    and the attempted production.  So, in our view, it's

6    something that has to be looked at in the totality, not just

7    the incident or moment that an image is either produced or

8    attempted to be produced.

9              THE COURT:  Well, recalling back to how these

10   events first started, when the young lady in question, the

11   victim came into Mr. Puglisi's class together with another

12   young lady and there was interaction between the three of

13   them and then finally there was more intense interaction

14   between the victim and the defendant, the Court doesn't feel

15   there's any way that the victim could not have realized at

16   all times that Mr. Puglisi was in a supervisory or teaching

17   position and that in my mind influenced the course of conduct

18   that resulted in the pictures and the other conduct so I

19   think it's applicable and I'm going to score it.

20             What's the next one?

21             MR. BRYAN:  Yes, your Honor, and the last one

22   is there's an enhancement for obstruction of justice.  And

23   two facts pointed out in the presentence report here, one is

24   that he deleted text messages from his cellphone and the

25   other is that after learning of this investigation, he asked

1  for the cellphone back.  It's very simple what we're relying

2  on the burden of proof.  We're saying, yes, those facts

3  occurred but there's not enough evidence, we've said that,

4  demonstrating a specific intent to obstruct justice.  The

5  cellphone, deleting text messages, I don't think there's

6  really evidence of when that happened and people delete

7  messages over time.

8            I think the harder one for us, frankly, is

9  asking for the cellphone back.  And our simple, you know,

10  asking the Court to review that, you know, there's just

11  simply no evidence what happened with the cellphone.  Simply

12  wasn't recovered.  He asked for it back.  I think what

13  happened here is that, you know, the police come in, or they

14  talked to the wife, they go to the school, they're

15  interviewing and this is on the same day and then the request

16  for the cellphone comes and it's brought to his classroom.  I

17  think he's arrested the same day so it's, you know, how can

18  you say he was trying to destroy or conceal this.  It just

19  simply wasn't recovered.

20            THE COURT:  You know, you're right, in one

21  respect there's no direct evidence of what happened but I

22  think there's pretty strong circumstantial evidence that the

23  Court has to take a look at.

24            MR. BRYAN:  Yes, your Honor.

25            THE COURT:  So, Mr. Lovric, did you want to be

1   heard on that issue?

2           MR. LOVRIC:  Judge, in our view this is, I

3   think, the easiest of the three issues.  There's really no

4   question the defendant took that phone back from the victim

5   because he knew that the police had been alerted and were

6   involved and that he did it so that he could remove from her

7   the instrument that he had been using to communicate with her

8   and the instrument that was used to take photographs that

9   were sent to him.

10          On that day the police went to interview his

11  wife and she tipped him off and that fact came in evidence.

12  There were actually texts and also the victim testified that

13  the wife called her and notified her that she was aware of it

14  and that the defendant told the victim that the wife told him

15  that the police were involved.  The police had no intention

16  of arresting him that day.  In fact, the reason they went to

17  arrest him was because they learned that he had been tipped

18  off so they arrived a few hours later.  But the recovery of

19  that phone in and of itself in taking it is obstruction

20  because he does it for one reason only, because he's been

21  tipped off that the police are aware and investigating.  He

22  doesn't do it because he's ending the relationship.  He

23  doesn't tell the victim, you know, this is a mistake, I

24  shouldn't have done this.  This is over between us.  He does

25  it for one reason; that is, because the police are not

1    involved and he concludes correctly they will at some point

2    come to look for that phone.

3            THE COURT:  All right.  Well, the Court thinks

4    that the enhancements correctly applied for the reasons that

5    I think and there is strong circumstantial evidence.  The

6    purpose for retrieving the phone was to prevent it from

7    falling in the hands of the authority and that's what it

8    seems to me happened.

9            Where that leaves us is that even though

10   initially the probation office and the Court did agree that

11   the total offense level is a 40, the Court doesn't believe

12   that to be the case, you know, because in holding that the

13   two points did not apply to the production count.

14           I think the total offense level will be a 38

15   and instead of a guideline range of 292 to 365, the Court's

16   going to find that the correct guideline range with a 38,

17   criminal history category of 1, is not 292 to 365 but is 235

18   to 293.  So, having concluded the guideline calculation,

19   let's get to the real issues in this sentence.

20           I'd like to hear, Mr. Bryan, what you have to

21   say on behalf of Mr. Puglisi with respect to what sentence

22   the Court should impose in this case?

23           MR. BRYAN:  Yes, your Honor.  And first we

24   want to thank the Court for, you know, the thoroughness and

25   effect the Court has looked at this case and how you have

1   looked at and you are looking at this case individually.  We

2   sincerely appreciate all of your effort.  And just a starting

3   remark, we've got a guideline calculation here but we've

4   got -- these child pornography guidelines are a problem and,

5   you know, they're called fundamentally different.  They're

6   not based on an empirical study.  So one thing to simply say,

7   we've gone through what we had to go through here on, you

8   know, what the guideline calculation should be but in terms

9   of the real sentence here, based on the actual facts, as it

10  should bear on a sentence, is these guidelines are not

11  helpful.  You know, in terms of giving guidance in this --

12  and particularly this case, we've outlined in our memorandum

13  to the Court a number of mitigating factors here that we

14  submit are a very strong basis, we contend, for leniency in

15  sentencing and we understand the -- we believe that based on

16  the facts in Mr. Puglisi's situation that -- if we were to

17  say without the statutory minimum what would be a sufficient

18  but not greater than necessary sentence based on these facts,

19  the sentence should be substantially less than 15 years and

20  we do have a constitutional argument before the Court.  What

21  I will do is address the factors.  If the Court should rule

22  that it's compelled to find the statute constitutional, we

23  respectfully submit the Court should give a lesser sentence;

24  then this is a case that shouldn't have anything more than 15

25  years.

1          The first thing -- as I came into the case and

2   my discussions with Mr. Accardi and looking at the facts here

3   that I started with is that we're dealing with a situation of

4   a good man, proven over his life time, who had a bad period

5   of time and that had to do with events that happened in his

6   life that for him caused him to have what's diagnosed as an

7   adjustment disorder with depression and this is not

8   something, you know, even -- this is really undisputed,

9   unquestioned that this happened.  The proof is there.  It's

10  in the mental records.  He went in 2008.  This is before the

11  events that are the subject of this case.  Went to his doctor

12  and his doctor diagnosed him with that and he was suffering

13  very severe symptoms.  Low self-esteem, manic episodes,

14  suicidal ideation, and impending doom.  I can go on with the

15  list.  He went to two doctors.  It was documented,

16  unquestioned.  He was suffering from a disorder, a

17  psychological disorder, and these are all effects, you know,

18  the medical literature on this, what that disorder can do to

19  a person fit like a road map of what then happened here.  One

20  of the things is, you know, a normal person can start to

21  engage in destructive behavior including criminal behavior

22  and that is what happened.  He's never denied that he -- he's

23  responsible for an illegal sexual relationship with a girl

24  who's not 17 years of age.

25          So, here I'm not going to go into detail about

1    what -- other than to say in terms of what was it that was

2    the cause here.  A failed marriage, separation from his

3    children and then -- and then, you know, a circumstance which

4    I will not go into in detail also occurring.  And, you know,

5    in thinking about this, Judge, you know you get -- your years

6    in sentencings seem to go on.  I've been an attorney for 30

7    years.  One thing I can say, you know, you get hit.  One

8    thing I know about life is everybody has their breaking

9    point.  Everybody.  Now, we all don't have the same breaking

10   point.  We don't have the same things that can break us and

11   hopefully we don't get hit with that thing that can break us

12   but he got hit with that thing that could break him and it

13   broke him and that's what happened here.  So, the Supreme

14   Court has said, you know, you know, this sort of a mental

15   diminishment, diminishing capacity is inherently mitigated

16   and, therefore, this is a very important factor I would

17   respectfully submit in leniency in the sentencing in

18   consideration.  He has said I deserve punishment.  He's

19   now -- fortunately about the condition, the literature says

20   it's a temporary thing.  Once the stressor, you get over the

21   stressor event, he's over it, he's now able to look back, my

22   God, what did I do?  And the other thing you would have to

23   say -- anybody who knows him, you look at everything, had he

24   not gone through this, there's no way in the world that this

25   man would have engaged in that conduct but for he went

1  through that event and it had its effect.  So, the question

2  is not punishment but the degree of punishment and it's a

3  very important mitigating fact for giving leniency in this

4  case.

5          The other thing, your Honor, you're a very

6  experienced Judge and, you know, it's an unfortunate thing

7  that these child pornography cases are becoming so much more

8  to the Court and to courts.  But one thing that the Court has

9  seen and the cases are showing is that the typical child

10  pornography cases and the typical defendants in child

11  pornography cases exhibit common characteristics and so one

12  thing you'll see and, by the way, this is -- it's not just,

13  you know, in the case law but, you know, there's an FBI

14  expert, I read the article on.  This is what's common.  They

15  maintain large collections, large, you know, hundreds,

16  thousands of pictures.  They're obviously demonstrating a

17  problem and the big problem with these -- the typical cases

18  and greatest concerns about these cases, not only punishment

19  for what they've done but the concern they could go out and

20  do it again.  That is a problem.  Society has a real concern

21  over that.  The question is that this case?  We're saying

22  absolutely not this case but the typical case is that you're

23  going to see large collections which means that this person

24  has then a history of, you know, long behavior.  Maybe even

25  prior convictions but certainly long-documented behavior

1   going back which is again indicating there is going to be a

2   problem going forward.  Things of this nature and while --

3   multiple victims is another thing, age of the children, very

4   young.  All of this.  It's just none of that is present here.

5   This is one of these cases that's truly apparent.  This was a

6   good man, great man.  You look at his background, hit a

7   horrible time in his life.  Went through a psychological

8   disorder and then committed criminal behavior during that

9   time and he's out of it.  So, risk of recidivism I would say

10  is almost nil.

11          We do have Charles Kramer who we brought in

12  also to evaluate him, very well versed in this area and said

13  this is not a man who has any of these problems that are

14  typical.  So there is no deviant sexual interest in children.

15  There's none of that.  We don't have that risk going forward

16  with him.

17          The other thing I think that's unusual about

18  this case, you know, there are so many letters.  One thing

19  that impresses me, so many letters, and it does -- the

20  consistency then shows proof of truth too.  You know, and you

21  have the community saying this man is not that man and

22  they've said repeatedly this is uncharacteristic.  They don't

23  excuse his behavior at all.  All the letters say that but we

24  want you to know that he is not that man generally.  But I

25  think the one that strikes me, not to discount any of this,

1    is the victim's mother.  I mean, you at sentencing, you know,

2    how often is it that, you know, it's the victim or someone

3    for the victim saying this is terrible.  You know, you have

4    to go hard here.  This -- if there was a person who would say

5    go hard, it would be the victim's mother.  Victim, of course,

6    says not at all, but the victim's mother.  If there is anyone

7    who would say -- who would have the least, you know, sympathy

8    for him would be the victim's mother.  And the victim mother

9    has said 15 years is far too harsh.  I know the facts of

10   this, that's far too harsh.  I don't excuse him but it's too

11   harsh so I think that that's something also here.

12              Now, there are a number of things -- I'll run

13   through them just to show, you know, to repeat really that

14   this is not your typical child pornography case.  This was

15   again consistent with his vulnerable state, you know, the

16   relationship was not solely sexual.  It was companionship,

17   friendship.  It turned sexual.  There was only a small

18   percentage of conversations by text that were sexual.  This

19   was an attempt, you know.  There were no nude photographs

20   that were transferred.  Ordinarily under -- yes, it is as

21   much under the federal statute it is conviction of the crime,

22   but if you look at state jurisdictions and, you know, usually

23   attempt is treated more leniently than commission.  This was

24   never -- if photographs were ever sent, if they would have

25   ever been sent, they certainly would have never been

1   disseminated.  That is a concern about whether photographs

2   get out there.  They meant to keep this secret.

3              The sexual relationship -- actually

4   companionship and then sexual relationship really came first

5   before the, you know, the texting that was the subject of the

6   criminal charges and the alleged request and, you know, the

7   Supreme Court -- reminds me of a case, I think it's McMillan

8   versus PA -- this was a pre-Apprendi case -- but sort of

9   leading to Apprendi.  In it we have the greatest concern or

10  we have great concern about cases in which the tail was the

11  dog, and so the dog is really -- what's the primary case?

12  What's it really about and then is there something ancillary

13  or secondary, it's there, but that second thing is driving

14  the harshest punishment.  And I respectfully submit that's

15  this case here.  You know this was illegal, rape in the third

16  degree because of the age and then during the process of

17  this, texting happened and yet the punishment that's being

18  driven is the texting later.  So without -- and by May -- we

19  completely accept what the jury has said.  We're not

20  discounting what the jury has said.

21             Now, looking at the whole picture because the

22  state conduct would be punished far less severely and yet

23  it's the main driving force of what happened here.  Short

24  duration of federal conduct.  It was less than two months of

25  texting.  Couple days where these alleged requests happen.

1   No other victims.  Presentence report has said that

2   Mr. Puglisi should receive and the Court has given the

3   acceptance of responsibility adjustment and that reflects --

4   this is a man who right away said I did it.  I'm sorry.  I

5   think as he came along and as he's getting out of this, you

6   know, being able to reflect back and he's getting out of this

7   disorder, he has someone -- he has deep, deep regret about

8   what has happened here.  Deep, deep remorse.  You know, if he

9   was able to take it, he would obviously.

10              I think what says a lot too here, when I came

11  in the case I started to find out something about what was

12  going on and I find out -- I learn that he's doing this --

13  these incredible things in jail and it is a factor under the

14  law to see post-arrest rehabilitation and this is not a man

15  who thought he was going to get anything from it.  It's his

16  intent to keep doing it while he's in prison.  Tremendous.

17  You talk to the jails, they can't believe this guy what he's

18  doing for other inmates and when he goes off to prison, what

19  he'll be able to do and what he will do.  He's going to do

20  it.  He already did it without any suggestion and it's a

21  way -- recognizing what he did was wrong, what can I do to

22  help make amends, you know, and be productive, back to the

23  person I was, you know.  So again mitigating.

24              Now, there is -- he's a teacher and we're not

25  going to gild the lily on it -- about it and that's

1  something -- I'd simply say that -- what I ask the Court to

2  consider most is yes, but he wasn't who he was.  He was

3  vulnerable.  He was suffering from this disorder.  Something

4  that, you know, you weigh that fact against all this other

5  mitigating facts and still this huge number, amount of

6  mitigation is something that I respectfully submit compels

7  the lesser sentence.

8          In terms of his history and characteristics,

9  we, you know, I've already said this.  Obviously this is

10  aberrant behavior, no history.  I don't know how much the

11  Court sees this.  You know, he has -- these are teachers who

12  have taken off from work.  People who don't have to be here.

13  Yes, they wrote you letters and went to great effort to write

14  you letters, but this is really putting their money where

15  their mouth is to show you that this is real.  And it's a

16  judgment.  I mean, why would people go this much for somebody

17  unless -- and these are people who know him most.  This is

18  the community, it's not just family.  If he was not this

19  great person, teacher, upstanding person in the community,

20  charitable works, all of those things, you know, knowing that

21  he had done something wrong that any one would say -- and

22  they say is wrong and they don't diminish it but to say

23  unbalanced and looking at the whole picture, that this is a

24  man who deserves that leniency and so much so that, you know,

25  they're trying to show the Court he is someone who deserves

1     leniency.

2                 And just so -- the last thing is I asked you

3     to consider, you know, in getting the facts here to present,

4     I got to know the family a bit and it's an unusual family.

5     Unusual in a sense is one of those great families that you

6     see out there.  You wish more families were like this and,

7     boy, the support.  The talking every day -- they visit every

8     time they can.  Judge, when he goes off to state prison --

9     and just to ask the Court to recommend a prison as close,

10    this is a family who will not surprise me.  Every weekend.

11    They're going to wear the road out to that prison for the

12    next number of years that this Court sentences him and so I

13    ask the Court to consider the effect on them and on his

14    children.

15                Outside of this thing, father -- he was, you

16    know, great to these children.  His wife's first child and

17    the child looks at him, you know, it's devastating to the

18    child, you know.  So to give these people time with him, his

19    parents, before they pass on, his children at least, you

20    know, at some point to resume a relationship, this is a

21    situation where I ask the Court to consider those things.

22                Those are the mitigating facts I ask the Court

23    to consider.

24                THE COURT:  All right.  Thank you, Mr. Bryan.

25    Mr. Lovric.

1          MR. LOVRIC:  Judge, briefly but I do need to

2    address a few of the different components of the sentencing

3    procedure today.

4          THE COURT:  Sure.

5          MR. LOVRIC:  Prior to coming here today, I've

6    been in touch with the victim's mother and she indicated to

7    me that she was not going to be able to be here but she sent

8    me a letter that she asked me to read to the Court and I

9    promised her that I would read it so I would like to do that.

10   And just for the record the victim is in the courtroom today.

11   I've asked -- I've had someone ask her if she wanted to

12   speak, she indicated no but, as the Court knows, she does

13   have the right if she wants to address the Court.

14         THE COURT:  That's true.

15         MR. LOVRIC:  The Court has seen and heard her

16   in that she testified at the trial but I just want to make

17   sure the Court is aware, you know, we have presented her the

18   opportunity and advised her that she's entitled to speak here

19   today.

20         THE COURT:  Okay.

21         MR. LOVRIC:  The victim's mother sent me the

22   following letter that I'd like to read into the record, if I

23   may.

24         THE COURT:  You may.

25

1          MR. LOVRIC:  It reads:  As parents, we're

2     legally obligated to make sure that our children are

3     educated.  This is a non-negotiable mandate and most parents

4     are left with only one option, the public school system.

5     Once our children leave our care and are in the hands of the

6     educational system, we are given no choice but to believe

7     that they're being kept safe and out of harm's way.

8     Naturally, the teaching professionals are set -- are set to a

9     very high standard.  They're meant to teach and guide our

10    children on a path to their becoming bright young adults.

11    They're meant to be mentors and character builders.  They're

12    meant to provide an environment of trust.  They're expected

13    to strive for academic success in their students.  They're

14    supposed to protect them.  They're supposed to watch over

15    them.  Mr. Puglisi showed blatant disregard for all the

16    standards to which his profession held him.  He ignored every

17    moral, ethical, and professional choice he could have made

18    and chose to do the opposite.

19          With that said, Mr. Puglisi is facing a

20    possible sentence of 15 to 30 years in prison.  I'm not

21    attempting to say that I understand the complexity of the

22    law; however, even at this time of trouble I can certainly

23    see the unbalance in the justice system.  Putting this in a

24    deeper perspective, my father was hit and killed by a drunk

25    driver in 2005 in Onondaga County while walking his dog.  The

1   man that hit my father and then drove away never touched his

2   brakes.  He had been drinking.  He had three prior-related

3   convictions and was still able to carry a New York State

4   license and operate a motor vehicle.  That man was sentenced

5   to only six years in state prison.  Of those six years, he

6   served only four.  He was given two years of probation.  This

7   man is out today walking the streets and this is to be the

8   justice for my father's life.

9           It is my feeling that all charges against

10  Mr. Puglisi are warranted, with the exception of one specific

11  charge.  It is my firm belief that the federal pornographic

12  charge should have been dropped during the trial.  It seems

13  that the law was manipulated and bent to fit this case

14  specifically in that regard.  I say that because no photos

15  were ever listed -- no photos were ever listed into evidence

16  and the jury convicted him of this charge based on assumption

17  of specific text taken out of context.  In my mind, this

18  leaves only questions and doubt.  There were no pictures and

19  with that said, right or wrong, there should be no

20  pornography charges.

21          Based on the factual evidence, if Mr. Puglisi

22  is sentenced to the minimum of 15 years, it would be five

23  years longer than what is truly right and justified.

24  Emotions aside, I'm convinced that a ten-year sentence is

25  completely acceptable and reasonable based on the facts of

1    this case.  Any additional time over a ten-year sentence is a

2    truly miscarriage of the legal system in my opinion.  For

3    myself it comes down to simply -- down to simply to what is

4    right and what is wrong and its signed by Miss Susan Schwenk

5    who testified before this Court.

6                   THE COURT:  All right.  The Court recalls.

7                   MR. LOVRIC:  Judge, if I may.  If I can

8    address several of the different components and issues in

9    this case.  First, I know the defense has had an argument and

10   a motion that the Court should set aside the statutory

11   sentencing structure, the mandatory minimum in this case.  I

12   know we had a brief discussion before coming to Court.  The

13   government's view is the following on that:  The statutory

14   minimum and maximums here, as in all cases, were set by

15   Congress.  They are statutory.  They do not in any way have

16   the same component, discussions that are occurring now in the

17   courts as the guidelines are.

18                   In this particular case, this statute and

19   these statutes that Mr. Puglisi was convicted of have

20   uniformally and consistently been upheld by the circuit

21   courts as being Constitutional.  I believe they've been

22   attacked in pretty much every avenue as far as

23   Constitutionality and including, I believe, Eighth Amendment

24   attacks.  That being said, as much as anyone may think that

25   the statute, either in this case or otherwise, is in some way

1  unfair or in some way not applicable, in our view the fact of

2  the matter is this statute has to be applied, it has been

3  upheld and until some either circuit or US Supreme Court says

4  otherwise, it is a constitutional statute.  So in that

5  respect, we ask the Court to make that finding and to reject

6  the defense motion that the statute be found unconstitutional

7  as it applies to Mr. Puglisi.

8            Mr. Puglisi, as the Court knows, is facing

9  under the three counts, count one, the 15 to 30 year

10 mandatory minimum/maximum.  Count two, ten years to life and

11 then count three, a ten-year maximum with no mandatory

12 minimum.

13           I'd like to address one area that there was

14 some discussion and there has been before this Court when it

15 comes to the federal statutes and the state statutes.

16 Defense has made an argument under New York State Law the

17 punishment would be much, much less harsh for this type of

18 conduct and I've said this before, Judge, and I don't

19 apologize for it.  New York State is an absolute

20 embarrassment when it comes to the criminal statutes.  The

21 New York State Legislature has been doing absolutely nothing

22 when it comes to protecting rape victims and children.  I

23 used to be a New York State prosecutor and I recall cases

24 where someone was forcibly raped under extreme physical harm,

25 an unimaginable type of act, and under New York State Law

 1   many of those rapists would get three to nine years.  Five to

 2   15 years indeterminate.  Children who are sexually abused by

 3   their parent, by their guardian, getting weekends in jail,

 4   probation.  New York State should be absolutely ashamed of

 5   itself and New York State Law is an absolute joke.

 6              That being said, I don't believe it's correct

 7   to, therefore, compare the federal statutes to the lame

 8   New York State statutes.  It's not fair to compare the fact

 9   that the New York State statutes do not find it fitting to

10   punish people who commit horrific sexual crimes and then to

11   say the federal statue ought to do the same.  This is turning

12   justice upside down and on its head.  What New York State

13   needs to do, in addition to passing a budget, they need to

14   get their act together and pass statutes that protect people

15   that are sexually abused.  That's what needs to happen, not

16   that the federal statute somehow now have to come in

17   compliance with state law.

18              While preparing for this case, Judge, I read a

19   case actually and I'll cite it for the Court because I just

20   want to make sure the Court knows where I got this quotation.

21   It's United States District Court case out of Ohio, US versus

22   Cunningham, 680 F. Supp 2nd 844.  And the interesting part

23   about this case for me when I read it was the following:  The

24   Judge in that case -- it was a child pornography case but

25   factually different than this case so it wasn't the factual

1  part that caught my attention.  But the Judge quoted a world

2  leader as one saying the following:  There can be no keener

3  revelation of a society's sole than the way in which it

4  treats its children.  That Judge attributed that quotation to

5  Nelson Mandela.  And when I read that, part of what that

6  quote means to me and what I think it means in this arena is,

7  I think we are losing.  We're losing in this society, I think

8  in the world, we're losing our soul as the Judge put it.

9  When you think about it, what's the most important thing that

10  the criminal justice system can deal with?  And the most

11  important thing we can deal with is protection of minors.

12  Granted, violent crime, gangs, drugs, they all impact our

13  society.  They all impact our way of life day to day but I

14  think all of us would agree that the biggest impact that any

15  criminal statutes can try to address is what happens to our

16  minors.  What happens to the children?  What happens to the

17  people that are really not capable in any way of really

18  protecting themselves and in many ways I agree with that

19  quotation and with what that Judge said in the case, in his

20  opinion, which is our country and our world is losing its

21  soul.  We're losing our soul because we're failing to protect

22  minors.  We're failing to protect the people that can't

23  protect themselves.  It brought to my mind -- it brought

24  things of what we used to do, 20, 30, years ago.  And we do

25  still some today.  In school, in DARE programs, every way

1   that we can.  What do we teach our kids today, whether they

2   be high school students, grade school, elementary school?  We

3   teach them be careful when you have go out to the parks.  Be

4   careful when you're by yourself.  Stay away from the creepy

5   looking people.  Stay away from those people that want to

6   come up and talk to you or want to give you something or want

7   you to go help them to search for their dog.  We teach these

8   kids -- and today with the internet, high schoolers, we teach

9   them stay away from the chat room.  There's a lot of people

10  there who aren't what they represent and we've done that

11  consistently.  What have we also done consistently?  What do

12  we tell children, minors, high school students, grade school

13  students?  Who do we tell them to respect and to listen to?

14  Listen to your teachers.  Listen to the police officers.

15  Listen to your counselors.  We put these people on a pedestal

16  and, in fact, we tell them these are the people you should

17  listen to.  These are the people that you should have guide

18  you, to help you get through life, to keep you safe.  These

19  are the people that if you have problems go to.  And the

20  problem, Judge, is that we see it more and more now in this

21  courtroom.  We see teachers being prosecuted.  We see coaches

22  being prosecuted.  We see prosecutors being prosecuted.  We

23  see judges who commit these crimes.  We see the people we've

24  always elevated and told children to respect and to look up

25  to.  We see more of these people violating that oath and that

1  trust.  A few years ago I remember reading an article where a

2  federal prosecutor from Florida was caught in an FBI sting

3  trying to pay a fictitious undercover FBI agent out of

4  Chicago the right to have assess with a five-year-old minor

5  and the federal prosecutor flew from Florida to Chicago, I

6  believe, thinking he was going to meet this woman and have

7  sex with this five-year-old girl.  It is mind boggling --

8  it's mind boggling as to what is happening today and what

9  we've always consistently tried to keep our kids safe from.

10  We no longer can tell our kids watch out for creepy old men

11  near the park.  Watch out for those people that want to give

12  you candy and lead you away.  The world has gotten too

13  complicated with these sexual offenses and my point to all of

14  this, Judge, is that Mr. Puglisi -- and I'm not here to

15  render any broad judgments.  I'm here to simply address what

16  he did.  I'm not saying that he is some monster.  I'm not

17  saying that he hasn't been a good person and done a lot of

18  good things.  I think those are absolutely true things but

19  what happened here is extremely, extremely difficult to

20  comprehend and it is really very wrong in terms of what he

21  did with this minor.  And the reason for that is, and Miss

22  Schwenk says it to a certain degree, he was one of the good

23  guys.  He was supposed to be protecting, mentoring, being a

24  guide post.  He was supposed to make sure that something like

25  this didn't happen to this victim or to any other kids at the

1  school and that's why this is so serious because he was one

2  of the good guys.  He was one of the people that the school,

3  society, parents, community expected more of.  In fact, they

4  sent him the kids, not literally, but he's a part of the

5  program where kids were sent in order to get them through

6  these difficult years of adolescence and teenage years.  And

7  that's why I go back, that's why this is so serious.  If

8  Mr. Puglisi was not a teacher, and he was just some regular

9  person, truck driver or salesman or lawyer, it would be

10  different.  But in his position, most of all, he is held to

11  this higher standard and the reason is these kids, and they

12  are kids regardless of what they think they are at the age of

13  16 and 17.  These are nothing more than kids and the victim

14  here, I know how she still feels about him and I've said this

15  in the past in these kinds of cases.  I feel very sorry for

16  her today because she doesn't think so and she thinks that we

17  are all out of our minds but she, to this day, is victimized.

18  She doesn't understand and I predict somewhere in her life,

19  many years down the road she will understand what an impact

20  this has on her and on her future relationships and her

21  future way of looking at life.  But she doesn't see that

22  today.  And I think that's very sad because the fact of the

23  matter is, at some point in her life I think she will get hit

24  with a ton of bricks when she realizes and puts all of this

25  in perspective.

1          I don't disagree that Mr. Puglisi has done

2     many wonderful things in his life.  I do disagree with the

3     fact that, to some degree, the defense has portrayed this as

4     a bad period in his life.  Did he go through a bad time in

5     his life?  Absolutely.  His marriage, the things that come

6     with marriage and children.  Those are difficult things for

7     any person to undergo.  But to say that that translates into

8     some type of a syndrome I believe is simply incorrect and

9     inaccurate.  I respect the defense's expert review.  The fact

10    of the matter is, Judge, in our view he had a difficult time

11    period that he was undergoing, but that doesn't explain or in

12    any way justify the repeated actions that he took in the

13    course of this relationship with this minor.  I mean, if we

14    look back at the evidence, this was over many, many weeks,

15    perhaps as long as a two-month period.  He bought her

16    different cellphones.  The school actually confronted him

17    about three weeks before his arrest and he knew that the

18    school knew there was something going on and he buys her a

19    different phone so they can continue communicating and, in

20    fact, that's when most of the photographs are taken by the

21    minor and sent to him is after the school has a talk with

22    him.  He sends the mother this fictitious e-mail that he and

23    the victim concocted this story.  It's not aberrant behavior.

24    It's just repeated behavior.  I'm not here to try to

25    characterize why he did this.  I do believe in many respects

1   a great deal of this activity had to do with sexuality.  He

2   was attracted to this girl.  She was attracted to him.  The

3   opportunity presented itself and Mr. Puglisi took that

4   opportunity.

5           The rest of it, Judge, kind of reminds me,

6   many years ago I remember I used to watch 60 Minutes quite a

7   bit back when the show I think was a little bit more

8   realistic and Andy Rooney had this piece on which I thought

9   was kind of interesting and it was a piece on how our society

10  today has become, it's not my fault.  And he goes on to

11  describe how when children do poorly in school, well, it's

12  the teachers.  They're bad.  They're not doing their job.

13  They must not be doing it right or when someone gets fired,

14  well, it's my employer.  They're discriminating against me

15  because I'm big, short, fat, skinny, I'm black, white or this

16  or that.  And he went on with this piece and there's some

17  truth to that I think.  In the society today we're so quick

18  to say it's not my fault, I had this problem or I have this

19  problem or it was this that caused me, and we've had some

20  bizarre even defense tactics.  The Twinkie defense, the sugar

21  defense.  And, you know, Judge, I just think Andy Rooney had

22  it right, which is we're blaming everything and everybody

23  except ourselves.  We just don't take responsibility for

24  anything.  Do we make poor choices?  Absolutely.  Did

25  Mr. Puglisi make a poor choice?  Absolutely.  But it's his

responsibility.  His marriage failing didn't cause him to do
this.  His marriage problems didn't cause this to happen.  He
decided that he wanted to have a relationship with this
underaged young girl.  He made a big mistake, period.  That's
all it is.  Instead of saying, well, you know, it's really
this syndrome and this other thing that the doctors believe.
I just simply think that we are too quick to say it's not my
fault entirely or it's my fault a little bit but not the
whole thing.  It just reminds me of when you're a kid.  Your
mother blames oh, it's the other guys or it's the other group
of kids, that's why my Johnny got in trouble.  It's not
Johnny's fault.  We're always looking for this other group of
kids.  You know, where are they?  We never seem to find them.

Judge, I don't think Mr. Puglisi is any
monster and far from it.  I've prosecuted people that I truly
believed were monsters and I think this Court has seen a few
of them and Mr. Puglisi is not in that category and nobody is
saying that.  He has a lot of good qualities.  He has a lot
of things that he's done very, very well in life.  And
there's a lot of good people that stand behind him.  But the
point here today is to balance what he did in this case and
who he is in his entirety and totality as a person and that
unfortunately, Judge, is your job.  I'm not here to try to
convince this Court that this man deserves the maximum
penalty.  I don't believe that's the case.  The fact of the

1    matter is there has to be a balance and the balance has to be

2    with the egregious crime that he did commit and it's the

3    Court's function to deter not only Mr. Puglisi, other people

4    like him, other teachers, other people that are in his

5    position to make sure that Mr. Puglisi and other people are

6    deterred hopefully and understand that this kind of event and

7    crime will be dealt with harshly.  Not overly harsh but will

8    be looked at harshly because our number one priority is to

9    keep minors safe and keep them from being manipulated and

10   used by adults.

11            And so, Judge, I do rely on all the other

12   materials we have submitted to the Court, our sentencing memo

13   and most importantly, Judge, you heard the evidence and the

14   testimony and I think the Court has all the facts before it

15   to render a fair and just sentence.

16            THE COURT:  Mr. Puglisi, would you like to be

17   heard?

18            THE DEFENDANT:  Briefly, sir.  Right now I

19   just want to say I'm sorry.

20            THE COURT:  Okay.

21            THE DEFENDANT:  I hope, your Honor, that you

22   got the letter that I wrote.

23            THE COURT:  I did.

24            THE DEFENDANT:  I just want to say that I am

25   sorry.  I certainly regret all the pain that I've caused all

1    the people in this courtroom, all the people behind me and

2    beyond.  I ask that you consider -- I certainly did make

3    mistakes.  I'm not making excuses or trying to shield

4    responsibility.  I'm going to try do the best I can

5    regardless and I'll do whatever I can to help people in this

6    situation and beyond.  I guess I'm just asking that you give

7    me a chance to do that and give me a chance to help take care

8    of my kids, help Christen out, and my parents, my family, all

9    my friends, everybody who is here with me.  Just give me

10    whatever sentence you feel is appropriate.  Thank you.

11            THE COURT:  All right.  Mr. Bryan,

12    Mr. Accardi, do you know of any legal reason why I shouldn't

13    sentence Mr. Puglisi now?

14            MR. BRYAN:  None, your Honor.

15            MR. ACCARDI:  No.

16            THE COURT:  Mr. Puglisi, do you know of any

17    legal reason why I shouldn't sentence you now?

18            THE DEFENDANT:  No, sir.

19            THE COURT:  All right.  Well, a lot has been

20    said here in the courtroom today and, you know, it's like

21    everything else.  There's truth on both sides of the

22    equation.  Nothing is absolute.  Things always have different

23    angles to look at them from and in this case we start off

24    with Mr. Puglisi who was a family man and had a good strong

25    family that are still behind him and supporting him.  And

1    that's a very important factor for me to consider.  And I

2    think that's something that not only speaks to the past but

3    also speaks to the future, because when someone is sentenced

4    to a period of incarceration, and comes back out, if he

5    doesn't have a good support system and people that he can go

6    to, he may fall into the error of recidivism.  So that's one

7    of the things the Court is considering.

8              The Court is also considering all the

9    information supplied to it about Mr. Puglisi from those

10   people who he's worked with, who he lived in the community

11   with, and who interacted with him, as well as family members.

12   Because even though the letters were in a certain sense

13   repetitive about the good qualities that Mr. Puglisi has,

14   they also were, I thought, insightful.  They gave me a

15   perspective on Mr. Puglisi that I wouldn't have had if I just

16   sat in this courtroom and heard about the interaction between

17   the victim and Mr. Puglisi and that certainly didn't paint a

18   very good picture.  But I don't think that's the whole

19   picture.  I think the whole picture is completed by those

20   people that have spoken up for him on his behalf.  I think we

21   started off with a man who has done a lot of good things in

22   the past.  I won't use superlative adjectives.  He did things

23   that other people don't do.  For example, as I understand it,

24   what he did was when he came across students and other people

25   in the community who didn't have the basics, he took money

1  out of his own pocket to provide those people with those

2  things that they most needed and that wasn't something he was

3  doing with an eye toward, well, some day I'm going to be

4  standing in front of some Judge and he's going to be

5  influenced by what my conduct was in the past.  He had no way

6  of knowing what was coming down and I think that's a very

7  positive thing that the Court knows about Mr. Puglisi.

8              Now, we come along and he gets married and he

9  adopts the first born of his wife and then has another child

10  and the family seems to be doing well and there's no dispute

11  in this case, Mr. Lovric I'm sure will join me, in saying

12  Mr. Puglisi, except for this aberrant conduct, and I'll

13  characterize it that way, not in the legal sense but in the

14  sense that it is really aberrant from his character.  He is

15  being a good father and a good husband and doing all the

16  things he should do and a good teacher.  And those things are

17  going along.  All of a sudden, regardless of whether or not

18  Mr. Lovric characterizes it as a causative factor, I'm

19  convinced that he would not have gotten into this situation

20  if a series of events didn't occur where his wife decided to

21  do what she did and his marriage broke up and now he's on his

22  own and I believe that that certainly can be a very stressful

23  situation, especially for somebody who was deeply family

24  oriented and Mr. Puglisi was.  Some other people who didn't

25  have that orientation, that might have not been such a strong

1   stressor.  It might not have created a vulnerability for him

2   to be subject to committing criminal behavior.  So, I think a

3   lot of times I read reports of psychologists and other people

4   commenting on certain behavior and characteristics and I term

5   it psycho babble.  I don't think in this particular case that

6   was true.  I think there was a good analysis of the fact that

7   you had a person whose conduct and behavior was exemplary who

8   then came under a very stressful situation and it affected

9   him and the symptoms were there and I agree with the medical

10  analysis in this case, you can call it a medical analysis, at

11  least the psychological analysis that did cause and

12  contributed to the cause of certain behavior in this case.

13  So, we have that situation.  Then the next thing is the

14  conduct in the case.  I think sitting here now -- let's see

15  I've been on the bench 24 years as of March and then 23 years

16  as a practicing lawyer, so I guess I've seen a little bit of

17  human conduct.  And I think to call Mr. Puglisi a pedophile

18  in the classic sense is in error because he's not.  If you

19  want to say because he had relations with a 16-year-old girl,

20  that's a definition of pedophilia.  Okay.  I can buy that but

21  he's not in the same class as most of the people that stand

22  here before me who have something wrong with them that they

23  are attracted to young children and even -- and Mr. Lovric's

24  correct.  The 16-year-old person is a kid.  I mean, they

25  don't have the full developed mature sense that most of us

1  sometimes get when we go through life and hopefully a lot of

2  us get that.  So, I'm not sentencing him in the classic sense

3  of sentencing somebody who's a pedophile.

4          I think on the other hand -- other side of the

5  equation, that Mr. Lovric is correct that a teacher is held

6  to lot higher standard and you didn't teach the young lady

7  involved in this case.  She wasn't involved in your classroom

8  but I think that all students, all people in teenage years as

9  they go through maturing, I think look up to all people who

10  are labeled teachers, are called teachers and really do watch

11  what they're doing and how they do it, so they can take a

12  sense for themselves of how to conduct themselves and how to

13  behave and I think that's an unfortunate part of this case

14  because, even though there may have been a sexual attraction

15  by this young lady, you for she, I think a lot of this

16  relationship was driven by her respect for you as a teacher

17  and unfortunately you betrayed that respect.  I think that's

18  one of the components the Court has to give serious

19  consideration to as I sentence you.

20          Turning for a minute to the future.  What

21  you've done so far as you've been incarcerated also impresses

22  the Court that you're a good person.  You've tried to do

23  everything you could do humanly possible to interact with and

24  help those unfortunate people who are incarcerated with you

25  and I think that's a natural characteristic.  I don't think

1  that's a show.  I don't think you're putting that on to try

2  to get a lesser sentence.  I think you're doing it because

3  that's you and the Court also respects that.  And I think the

4  likelihood of recidivism in this case is very slim.  When I

5  sentence people and I fear -- and I'm with Mr. Lovric hundred

6  percent on this.  If I think they're dangerous to children or

7  young people in the community, I will deal with them as

8  harshly as I can given the situation.  I don't feel that way

9  about you.  I don't think you're a danger to go out and start

10 chasing around 16-year-old girls.  I think, as Mr. Bryan put

11 it, this is an unfortunate period in your life where you got

12 involved in this conduct.  I think it was aberrant behavior

13 and I think you've probably put it behind you and that's the

14 way I feel about this case so I can't consider future

15 dangerousnesses as a factor in pushing me toward a high

16 sentence.  I can consider all the things we have been talking

17 about which are really 3553(a) factors, although I haven't

18 discussed them as such.  I will mention it just so that the

19 Circuit feels that I understand what the statute says; that

20 the Court must sentence you in order to reflect the

21 seriousness of the conduct involved, that it was serious; to

22 deter you and other people who may be considering similar

23 conduct from committing similar crimes; to punish you for

24 what you have done and, of course, we've already pretty much

25 addressed the rehabilitation because the Court thinks that

1     you are rehabilitated insofar as what you've done so far.

2            Now, for one moment let me just mention the

3     Constitutionality involvement.  I agree with the government

4     that the statute itself on its face is constitutional and

5     I've taken a look at that and looked at the law that

6     surrounded it.  Then we have the question whether or not it's

7     constitutional as applied to you and in your situation.

8     That's not just an easy question for me to decide and that

9     involves three factors that the Supreme Court has listed and

10     I'm not going to go into all of them analyzing them for you,

11     but I've considered those.  I've also considered the cases --

12     now, I guess it's just been concluded in the Eleventh Circuit

13     where there was a strong argument raised about the

14     disproportionality of the conduct of the offense in the

15     sentencing imposed.  What that Judge was saying who got

16     reversed by the Eleventh Circuit was, look, the facts in that

17     case should not have driven the sentence as high as was given

18     because of the statutory mandatory minimum.  And that's the

19     kind of case we have here before us today.  There's a

20     statutory mandatory minimum set by Congress under the law of

21     15 years and in order to give you a sentence above that, as

22     the government has advocated, for example, your guideline

23     range is 235 to 293, I would have to be convinced that your

24     conduct in this case, coupled with your personal

25     characteristics, would drive a sentence like that to protect

1  the public and to punish you.  I don't believe that's the

2  case here.  As a matter of fact, the mandatory minimum in my

3  judgment, if I were free to do anything with it, is also too

4  high.  I think -- I think a sentence approximating somewhere

5  in the neighborhood of eight or nine years would be

6  sufficient and not more than necessary.  But Congress has

7  spoken in this area.  I don't have the authority to give you

8  a sentence other than that that Congress proscribes in that

9  statute.  I cannot say Congress, you're wrong, Mr. Puglisi

10  should get what I think he should get.  I'm not allowed to do

11  that.  That's not the law.  One of the things I did do is

12  take an oath of office.  When I took that oath of office I

13  swore I would uphold the law and that's what I'm going to do

14  in sentencing you here today.

15          So, there's a lot of formal language that's

16  going to come now but I think I've said to you as much as I

17  can say about how the Court feels about what happened in this

18  case.  I agree with Mr. Lovric that the victim doesn't

19  realize that she is a victim.  I also agree that later on in

20  her life perhaps the realization will come to her when she

21  mothers her own children and has interaction with a lot of

22  other people along the course of her life and I think that's

23  a sad thing and the whole matter, of course, is a tragedy.

24          So, the Court has reviewed and considered all

25  pertinent information including, but not limited to, the

1   presence investigation report, the addendum, the

2   submissions by counsel, the factors outlined in 18 US Code

3   Section 3553(a) and the sentencing guidelines.  The Court has

4   already adopted the factual content of the presentence report

5   and also found the total offense level to be a 38 with a

6   range of 235 to 293.

7          Having been found guilty on counts 1 through 3

8   of the indictment, it's the judgment of this Court that

9   you're hereby committed to the custody of the Bureau of

10  Prisons to be imprisoned for a term of 180 months.  This

11  consists of 180 months on counts 1 and 2 and 120 months on

12  count 3, all to run concurrent.

13         The Court finds that a non-guideline sentence

14  here is sufficient, but not greater than necessary to comply

15  with the purposes of sentencing set forth in the statute.

16  Coupled with the life-long term of supervised release, the

17  Court believes this sentence provides just punishment for

18  your offense and provides adequate deterrence for future

19  criminal behavior.  In determining this sentence the Court

20  has considered the following factors, in addition to what

21  I've already mentioned:  You have no criminal history and

22  there's no evidence that you've done something like this

23  before.  The numerous letters, I've already addressed those,

24  that support you, tell me that you've had good character and

25  were valued in this community as a good teacher.  The Court

1  feels that the mental depression that you were suffering

2  from, supported by the evidence in this case, was a causative

3  factor in your situation that occurred.  The Court also

4  considered the nature and circumstances of the offense and

5  finds the case is not, as I've said, a typical production

6  case, and I believe the sentence imposed balances the need to

7  hold you as a teacher to a higher standard while adequately

8  taking into consideration the circumstances in the offense

9  and your personal characteristics.

10           While in custody the Court recommends you

11  submit to sex offender evaluation and participate in sex

12  offender treatment, if deemed necessary.  In the alternative,

13  it's recommended that you participate in the sex offender

14  management program, if eligible.  If you refuse to do that,

15  or cooperate with treatment, the Court will then address this

16  at the time of your release from imprisonment.

17           Upon your release from imprisonment you shall

18  be placed upon supervised release for a term of life on each

19  count to run concurrently.  While on supervised release you

20  shall not commit another federal, state or local crime and

21  shall comply with the standard conditions that have been

22  adopted by this Court and the following special conditions:

23  You shall not have any direct or indirect contact with

24  xxxxxxxxxxxxx.  You shall not have direct contact with a

25  person under the age of 18 years unless it's supervised by a

1    person approved of by the probation officer.  You shall not

2    have indirect contact with a person under the age of 18

3    through another person or through a device, including a

4    telephone, computer, radio or other means, unless it's

5    supervised by a person approved of by the probation office.

6    You shall reasonably avoid and remove yourself from

7    situations in which you have any contact or form of contact

8    with a minor.  You shall not be in any area where persons

9    under the age of 18 are likely to congregate, such as school

10   grounds, child care centers or playgrounds without the

11   permission of the probation office.

12              You shall register with the state sex offender

13   registry agency in any state where you reside, are employed,

14   carry on a vocation or are a student.  You shall participate

15   in a mental health program which shall include, but not be

16   limited to, participation in a treatment program for sexual

17   disorders.  The program shall be approved of by the United

18   States Probation Office.

19              Your supervised release may include

20   examinations using a polygraph, computerized voice stress

21   analyzer or other similar device to obtain information

22   necessary for supervision, case monitoring and treatment.

23   You shall answer the questions posed during the examination,

24   subject to your right to challenge in a court of law, the use

25   of such statements as violations of your Fifth Amendment

1    rights.  In this regard you shall be deemed to have not

2    waived your Fifth Amendment rights.  The results of any

3    examination shall be disclosed to the United States Probation

4    Office and the Court but shall not be further disclosed

5    without the approval of the Court.

6                    You shall contribute to the cost of any

7    evaluation, testing and/or treatment and/or monitoring

8    services rendered in an amount to be determined by the

9    probation office based on your ability to pay and

10   availability of third-party payments.

11                   You shall not use or possess any computer or

12   any other device with online capabilities at any location,

13   except at your place of employment, unless you participate in

14   the Computer Restriction and Monitoring Program.  You shall

15   permit the United States Probation Office to conduct

16   periodic, unannounced examinations of any computer equipment

17   you use or possess, limited to all hardware and software

18   related to online use.  For example, the use of the Worldwide

19   Web, e-mail, instant messaging and the like.  These

20   examinations may include retrieval and copying of data

21   related to online use, and the viewing of pictures and movies

22   which may be potential violations of the terms and conditions

23   of supervised release from this computer equipment including

24   any internal or external peripherals, internet-capable

25   devices and data storage media.  This computer equipment may

1    be removed to the probation office or to the office -- to the

2    probation office or to an office of their designee for more

3    thorough examination.  The probation office may use and/or

4    install any hardware or software system that is needed to

5    monitor your computer use, subject to the limitations I

6    described.

7              If your employment requires the use of a

8    computer you may use a computer in connection with your

9    employment approved by the probation officer, at your place

10   of employment, provided you notify your employer of the

11   nature of your conviction and the fact that your conviction

12   was facilitated by the use of a computer.  The probation

13   office must confirm your compliance with this notification

14   requirement.

15             In the event your treatment provider

16   determines that the use of a computer or internet service is

17   contraindicated to your course of recovery, the Court, upon

18   considering such information, may prohibit the use of the

19   computer if the Court is convinced that such is the case

20   based upon the evidence.

21             While in treatment and for the remainder of

22   the term of supervision following completion of treatment,

23   you shall not view, possess, own, subscribe to or possess

24   material including pictures, videotapes, films, magazines,

25   books, telephone service, electronic media, computer programs

1  or computer services that depict sexually explicit conduct,

2  as defined in 18 US Code Section 2256(2).

3          You shall pay to the Clerk of the Court a

4  special assessment of $300 which is due immediately.  The

5  Court finds that you do not have the ability to pay a fine

6  and does not order a fine.

7          Both you and the government have the right to

8  appeal this sentence and if you're going to take an appeal

9  you have to file it within 14 days of the date of this

10  sentence.

11          The Court will request that the Bureau of

12  Prisons place you as close to the Triple Cities area as is

13  possible.

14          Is there anything further from the defense?

15          MR. BRYAN:  Nothing, your Honor, other than to

16  say thank you on behalf of Mr. Puglisi and everyone here.

17          MR. ACCARDI:  Nothing further, your Honor.

18          MR. LOVRIC:  No, your Honor.

19          THE COURT:  Good luck.  Court stands

20  adjourned.

21          (Court stands adjourned)

22

23

24

25

1               C E R T I F I C A T I O N

2

3

4         I, VICKY A. THELEMAN, RPR, CRR, United

5 States Court Reporter in and for the United States

6 District Court, Northern District of New York, do

7 hereby certify that I attended at the time and place

8 set forth in the heading hereof; that I did make a

9 stenographic record of the proceedings had in this

10 matter and cause the same to be transcribed; that

11 the foregoing is a true and correct copy of the same

12 and the whole thereof.

13

14

15                        _____

16                        VICKY A. THELEMAN, RPR, CRR

17                        United States Court Reporter

18                        US District Court – NDNY

19

20

21 Dated:  November 10, 2010.

22

23

24

25